**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Matt J. Mided,<br>Petitioner<br>-vs-<br>Edwin Jensen, et al.,<br>Respondents. | CV-13-8050-PCT-GMS (JFM)<br><br>**Report & Recommendation on Petition<br>for Writ Of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at San Luis, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 14, 2013 (Doc. 1).  On August 19, 2013 Respondents filed their Response (Doc. 11).   Petitioner filed a Reply on December 3, 2013 (Doc. 17). Respondents filed their Supplemental Exhibits on February 14, 2014 (Doc. 19).

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

## A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the factual background as follows:

> An anonymous subject contacted Detective Brandon Rumpf of the Yavapai County Sheriff's Office and informed him of a possible delivery of methamphetamine to a service station in Black

1

Canyon City.  The subject said the person making the delivery would be a man named Matt, about six feet four inches tall, with brown hair in a ponytail, and that he would be driving a red 1990s-model Toyota Tacoma pickup truck with white tabs over one of the wheel wells where a chrome strip had been removed. Based on the tip, Rumpf went with his partner, Detective Bret Hood, and several other detectives to the service station where the delivery was to be made.

While the detectives were at the service station, a red Toyota Tacoma pickup truck driven by a man matching the informant's description pulled up to a gas pump. Rumpf parked his vehicle behind the pickup truck, stuck his head outside the open window and yelled, "Max," to the pickup' s driver. The driver identified himself as "Matt." After Rumpf asked the driver for identification, he handed Rumpf a driver's license identifying him as Mided. Mided told Rumpf he was in Black Canyon City to pick up money to post bond for a friend.  Rumpf asked Mided if he could search Mided's truck for drugs, to which Mided responded, "Yeah, go ahead."

While Rumpf was talking with Mided, Hood approached the vehicle's passenger, Karen Humphrey. After handing Hood her identification, Humphrey began to cry and told Hood there was an outstanding warrant for her arrest. Humphrey told Hood there were drugs behind the seat in the pickup truck. Hood then told Rumpf of Humphrey's admission. Rumpf tilted the truck's front passenger-side seat forward and observed what was later determined to be some methamphetamine wrapped in plastic.

After Rumpf found the methamphetamine, another detective, Jeff Long, took swabs of the inside of the vehicle that tested positive for the presence of methamphetamine.

(Exhibit F, Mem. Dec. 10/29/09 at 2-4.)  (Exhibits to the Answer, Doc. #, are referenced herein as "Exhibit ___." Supplemental Exhibits (Doc. 19) to the Answer are referenced herein as "Exhibit S1___.")[1]

## B. PROCEEDINGS AT TRIAL

Mided was charged in Yavapai County Superior Court with transportation for sale of a dangerous drug, possession of a dangerous drug, and possession of drug paraphernalia.  (Exhibit F, Mem. Dec. 10/29/09 at 4.)

After requests for appointment of new counsel were granted three times, counsel moved to suppress the evidence from the truck.  At the hearing on the motion, Petitioner asked to represent himself.   The request was granted and advisory counsel was

---

[1] The list of exhibits in Respondents' Supplement reverses the order of Exhibits S1-A and S1-B.  The references used herein are those of the cover labels for the exhibits.

appointed.  (*Id.* at 4-5.)

After a continuance of more than 30 days and appointment of an investigator, and denial of a second continuance, Petitioner proceeded with the suppression hearing.  The trial court denied the motion, finding Petitioner consented to the warrantless search.  (*Id.* at 5, 11.)

Eventually, Petitioner stipulated to a trial before the court on exhibits, with a stipulation to a maximum sentence of 7.5 years, withdrawal of an allegation of commission while on probation and all but one prior offense.  At Petitioner's request, advisory counsel was reappointed as counsel of record, and the stipulation was accepted by the trial court.  (*Id.* at 5-6.)

> Based on the submitted exhibits, which included evidence of a prior felony conviction, a scientific report indicating the substance found in Mided's truck was methamphetamine and testimony from the evidentiary hearing, the superior court found Mided guilty of transportation for sale of a dangerous drug methamphetamine, a Class 2 felony; and possession of drug paraphernalia, a Class 6 felony. The court found Mided also guilty of possession of a dangerous drug but concluded that charge merged with the charge of transportation for sale of dangerous drug.

(*Id.* at 6.)

Petitioner was sentenced to a mitigated term of 7.5 years on the transportation charge, and a concurrent, aggravated term of 2.75 years on the paraphernalia.  (*Id.* at 6-7; Exhibit B, Verdict; Exhibit C, Sentence.)

## C. PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a notice of direct appeal, and counsel was appointed.  Counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967) and related state authorities, espousing an inability to find an issue for review.  (Exhibit D.)  Petitioner filed a *pro se* Supplemental Brief (Exhibit E), arguing that the trial court erred in denying the motion to suppress, basing a decision on "'notes' not facts as taken by the court reporter", denying the motion to continue the suppression hearing, granting the prosecutions objections to questions, appointment of ineffective counsel, and allowing

inconsistent testimony by the detectives.

The Arizona Court of Appeals rejected the ineffective assistance claim as properly raised on post-conviction review, rejected Petitioner's claims, reviewed the record for reversible error, and affirmed the convictions and sentences.  (Exhibit F, Mem. Dec. 10/29/09.)

Petitioner did not seek further direct review.   (Exhibit G, Mandate 3/4/10; Petition, Doc. 1 at 3.)


### D.  PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner filed a Notice of Post-Conviction Relief (Exhibit H), counsel was appointed who filed a notice of inability to find an issue for review (Exhibit I). Petitioner then filed a *pro per* Petition for Post Conviction Relief (Exhibit J), but then sought and obtained leave to file an amended petition.  (Exhibit K, Order 10/12/10.) Petitioner then filed an Amended Petition for Post Conviction Relief (Exhibit L), arguing that he was denied his right to self representation (*id.* at 11-14); he was denied effective assistance of counsel as a result of trial counsel's failure to secure surveillance video from the service station (*id.* at 14-16); denial of effective assistance of appellate counsel for failing to challenge the denial of the right to self-representation (*id.* at 17); denial of his right to a jury trial by requiring him to choose between self-representation and ineffective counsel (*id.* at 18-19.)

The state responded, arguing that "most of the issues" were precluded because "they either were or could have been raised on appeal."  (Exhibit P, PCR Resp. at 5.) The state further responded that Petitioner's waiver of counsel was knowing and voluntary, he was not denied his right of self-representation, none of his counsel was ineffective, and his claim of a sentencing discrepancy was without merit.

The trial court summarily rejected the claims asserted by Petitioner, searched the record for a basis for post-conviction relief but found none, and dismissed the petition. (Exhibit M, Order 2/4/11.)

Petitioner sought review by the Arizona Court of Appeals, raising the same arguments asserted to the PCR court.  (Exhibit S1-B, PFR.)    The Arizona Court of Appeals granted review, but denied relief.  (Exhibit N, Mem. Dec. 8/13/12.)  Petitioner sought reconsideration, which was denied.  (Exhibit O, Order 9/11/12.)

Petitioner did not seek further review.  (Exhibit N, Mandate 10/22/12; Petition, Doc. 1 at 5.)

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 14, 2013 (Doc. 1).[2]  Petitioner's Petition asserts the following four grounds for relief:

> (1)    Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights were violated because he did not receive effective assistance of counsel;
> (2)    Petitioner's conviction was based on illegally obtained evidence, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments;
> (3)    Petitioner's pre-trial, trial, and appellate counsel were ineffective in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments; and
> (4)    Petitioner was denied his right to self-representation, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments.

(Order 6/3/13, Doc. 4 at 2.)

**Response** - On August 19, 2013, Respondents filed their Response ("Answer") (Doc. 11).   Respondents argue that Grounds One and Three are without merit, that Ground Two is not cognizable on habeas review, and that Ground Four was procedurally barred on review of Petitioner's PCR petition.

**Reply** - On December 3, 2013, Petitioner filed a Reply (Doc. 17).  Petitioner argues that his claims in Grounds One and Three have merit, he was denied a full and

---

[2] The Court notes that Petitioner has interwoven his exhibits in the middle of his Petition, rendering review of the Petition and citation to page numbers unnecessarily difficult. The detrimental effect is compounded by the fact that many of his exhibits themselves contain exhibits.  In the future, Petitioner is encouraged to append exhibits at the end of a pleading, clearly label them, and address them in the pleading by references to the labels.

fair hearing on his exclusionary rule claim in Ground Two and thus it is cognizable, and that his failure to properly exhaust his state remedies on Ground Four was the result of ineffective assistance of appellate counsel.

**Supplements** –The Court directed Respondents to supplement the record with copies of briefs filed with the Arizona Court of Appeals, and set a deadline for Petitioner to object to the exhibits.  (Order 2/3/14, Doc. 18.)  On February 14, 2014, Respondents supplemented the record (Doc. 19).   Petitioner has not filed any objections to the exhibits, and the time to do so has expired.

### III. APPLICATION OF LAW TO FACTS

**A.  GROUNDS ONE AND THREE: INEFFECTIVE ASSISTANCE**

In Ground One, Petitioner asserts that PCR counsel was ineffective.  In Ground Three, Petitioner argues that pre-trial, trial and appellate counsel were ineffective.

**1.  Standards for Habeas Relief for State Prisoner**

While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief. Under 28 U.S.C. § 2254(d), federal habeas relief may only be granted to a state petitioner in very narrow circumstances, e.g. where the decision was "an unreasonable application of or contrary to" Supreme Court law, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(1) and (2). However, those limitations only apply when a state petitioner's claim has been "adjudicated on the merits." 28 U.S.C. § 2254(d).

**2.  Standards for Ineffective Assistance of Counsel**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, petitioner must show:  (1) deficient performance - counsel's representation fell below the

objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

**3.  Ground One – PCR Counsel**

In Ground One, Petitioner argues that PCR counsel was ineffective for failing to raise the ineffectiveness of trial counsel on the basis asserted in his Ground Three. (Petition, Doc. 1-3 at "6", physical page 41.)  Respondents argue, in effect, that a claim of ineffective assistance of PCR counsel does not amount to a constitutional violation, and that *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) held only that ineffective assistance of PCR counsel may establish cause to excuse a procedural default of a claim of ineffective assistance of trial counsel.  (Answer, Doc. 11 at 6.)  Petitioner simply replies that he believed the claim was allowed.  (Reply, Doc. 17 at 3.)

The Courts have long rejected claims of ineffective assistance of PCR counsel. "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *Coleman v. Thompson*,  501 U.S. 722, 752 (1991) (citations omitted).  The *Coleman* Court thus held that the ineffectiveness of PCR counsel also could not establish cause to excuse a failure to properly exhaust state remedies and procedural default on a claim.

In *Martinez*, the Court recognized, however, that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness.  Accordingly, the Court recognized a narrow exception to *Coleman's* ruling on the ineffectiveness of PCR counsel as cause to excuse a procedural default on such a claim.  In *Trevino v. Thaler*, 133 S.Ct. 1911

(2013), the Court extended *Martinez* to cases where state law did not mandate that claims of ineffectiveness be brought in PCR proceedings, but provided no other meaningful avenue for review.

The *Martinez* Court made clear, however, that it was not altering *Coleman*'s constitutional ruling that there was no constitutional right to effective PCR counsel.

> As *Coleman* noted, this makes the initial-review collateral proceeding a prisoner's "one and only appeal" as to an ineffective-assistance claim, and this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings.
> This is not the case, however, to resolve whether that exception exists as a constitutional matter.

*Martinez*, 132 S.Ct. at 1315.

In *Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013), the Ninth Circuit recognized the apparent incongruity left between the *Coleman* constitutional ruling and the *Martinez* procedural ruling, but declined to decide what the Supreme Court did not.

> The Court made it plain that the exception extended no further… If *Coleman's* revetment is to be torn down, it is not for us to do it.

*Hunton*. 732 F.3d at 1126.

Neither is it for this Court to do so.

Accordingly, Petitioner's Ground One is without merit and must be denied.


## 4.  Ground Three – Trial and Appellate Counsel

In his Ground Three, Petitioner argues that "pre-trial, trial and appellate counsel" were ineffective.  Petitioner complains that pre-trial counsel: (1) failed to pursue video evidence of the arrest, (2) failed to interview witnesses, (3) pressured Petitioner to sign a plea agreement, (4) failed to file a motion to suppress and then filed a "frivolous" motion to suppress, and (5) failed to adequately prepare for the suppression hearing. (Petition, Doc. 1-3 at "8", physical page 43.)

Respondents argue that Petitioner fails to make specific allegations as to any counsel other than those representing him prior to his waiver of the right to trial counsel.

Respondents argue that the only claim supported by specific facts is that regarding the surveillance video, and that the state court's rejection of that claim was not an unreasonable application of *Strickland*. (Answer, Doc. 11 at 7-9.)

Petitioner replies that counsel should have obtained the surveillance video and the employees who operated it. (Reply, Doc. 17 at 12-13.) He argues any failure to further develop his claims resulted from the ineffective assistance of appellate and PCR counsel. In particular, Petitioner alleges that appellate counsel failed to raise his claims of ineffective assistance of PCR counsel and his 4th Amendment claims. (Reply, Doc. 17 at 13-15.) He argues that even without audio, the surveillance video would have shown a variety of improper acts, including the officer pointing a gun at him and immediately swabbing the vehicle, the timeline of the conversations, and potentially "how the contraband got behind the passenger's seat." (*Id.* at 15.) Petitioner reports that in April or May, 2008 he was advised by the service station manager that the surveillance videos were taped over every two months. (*Id.* at 15-16.)

**Surveillance Video Evidence** – Petitioner argues that counsel was ineffective for failing to obtain the surveillance video. Petitioner raised this argument in his PCR proceeding. The Arizona Court of Appeals noted that "[t]ypically a defendant who waives his or her right to counsel cannot raise a claim of ineffective assistance of counsel." (Exhibit N, Mem.Dec. at 4.) The court then assumed without deciding that such a claim was cognizable, and concluded that Petitioner failed to provide allegations to support his claim:

> Although Mided argues the surveillance video "could have shown" that he had not consented to the search, he does not explain how this is possible, given that his consent was verbal and he does not assert the video recording included audio. And, although he claims he interviewed employees who informed him the recording had been destroyed two months after his arrest, he provides no evidence supporting this claim. Nor does he assert that any of his appointed attorneys were aware of the video recording, or had any reason to be aware of it, before its alleged destruction. Accordingly, he has not demonstrated that trial counsel's conduct fell below prevailing professional norms or that he was prejudiced by counsel's conduct.

(*Id.* at 4-5.)

9

Here, the Arizona court rejected this claim on its merits.  Accordingly, the limitations of 28 U.S.C. § 2254(d) apply.

The Arizona Court of Appeals applied a standard requiring "that counsel's performance fell below objectively reasonable standards and that this deficiency prejudiced the defendant." (Exhibit N, Mem. Dec. 8/13/12 at 4 (quoting *State v. Bennett*, 213 Arizona 562, ¶ 21, 146 P.3d 63, 68 (2006)).)    Petitioner makes no argument that this is contrary to the standard of *Strickland*.  Nor does Petitioner proffer anything to show that it was an unreasonable application of federal law or an unreasonable determination of the facts.

Counsel's Knowledge of Video – Petitioner counters the Arizona Court of Appeals finding that there was nothing to suggest that counsel was aware of the tape by arguing that Petitioner "notified the 1st counsel appointed Ray Hanna of the exculpatory evidence, the surveillance video and he refused to even try to obtain it." (Reply, Doc. 17 at 15.)  Petitioner reports being told that the video destruction occurred "every two months" (*id*. at 16), which presumably would have been during Hanna's tenure, Petitioner having sought to replace Hanna "[l]ess than two months" after his appointment (Exhibit D, Opening Brief at 1).[3]

Petitioner proffers nothing beyond his own statement to establish counsel's knowledge of the surveillance tape.[4]  Even presuming counsel was aware of the tape, Petitioner fails to establish that it would have been helpful.

No Audio – The Arizona court concluded that the lack of an audio recording rendered the surveillance video irrelevant on the basis that the consent to the search was verbal.  Petitioner argues that even without audio, the surveillance video would have shown a variety of improper acts, including the officer pointing a gun at him and immediately swabbing the vehicle, the timeline of the conversations, and potentially

---

[3]  Petitioner describes his conversation with counsel Hanna as occurring on May 25, 2007, just 23 days after his arrest.  (Petition, Doc. 1, Exhibit 5, Petitioner's Affidavit at 1.)

[4]  Petitioner relates that counsel Hanna told Petitioner "there are no tapes." (Petition, Doc. 1, Exhibit 5, Petitioner's Affidavit at 2.)

1    "how the contraband got behind the passenger's seat." (*Id.* at 15.)

2       Petitioner fails to explain how the officer producing a gun or swabbing the vehicle

3 would have disproven his having given verbal consent. To the extent that Petitioner

4 might intend to suggest that the gun or an unauthorized swabbing rendered his verbal

5 consent involuntary, Petitioner fails to show that these facts were ever presented to the

6 state courts as part of his claims.[5] Under 28 U.S.C. § 2254(d)(2), Petitioner may obtain

7 relief from the state court's decision on the merits by showing that it was "based on an

8 unreasonable determination of the facts in light of the evidence presented in the State

9 court proceeding." 28 U.S.C. § 2254(d)(2). Nowhere in his Petition for Review did

10 Petitioner argue that his verbal consent was involuntary, nor did he assert that the

11 officers pointed a gun at him or swabbed the vehicle prior to his consent. Indeed,

12 Petitioner has consistently maintained that no consent was ever given. (*See* Exhibit L,

13 Amended PCR Petition; Exhibit S1-B, Petition for Review; Exhibit S1-C, Reply on

14 PFR.)

15       To the extent that Petitioner simply proffers those allegations as support for his

16 contention that he was under arrest at the time any consent would have been given,

17 Petitioner fails to suggest how that would prove he had not given his consent, nor even

18 that it was involuntary.

19       Nor does Petitioner explain how the timeline of visible events from the video

20 would negate his having given consent. To be sure, there were discrepancies between

21 the arresting officers as to the precise timeline. In disposing of Petitioner's direct

22 appeal, the Arizona Court of Appeals summarized the testimony at the suppression

23 hearing:

24             At the evidentiary hearing, the Sheriff's Office detectives testified
            consistent with the facts as stated above, although there were some
25             inconsistencies. Hood, for example, testified he was not sure if
            Rumpf began searching Mided's truck before Hood told him
26

27   [5] In her *Anders* brief, appellate counsel observed that Petitioner's "third appointed counsel filed a motion to suppress the evidence on the ground that Appellant's alleged
28 consent to the search was coerced." (Exhibit D, Opening Brief at 2.) However, Petitioner did not raise such allegations in his petition for review (Exhibit S1-B).

Humphrey admitted there were drugs in the truck. Rumpf stated
Hood told him of Humphrey's admission after Mided consented to
the search, but before Rumpf searched the vehicle. Long testified
that he did not learn of Humphrey's statement until after he and
Rumpf had begun the search, but that he and Rumpf did not begin
the search until after Mided had consented. Mided maintained he
never consented to the search.

(Exhibit F, Mem. Dec. 10/29/09 at 5.)  Petitioner now alleges:

The video evidence, had counsel obtained it would have shown
petitioner pulling up to the gas pump, going inside to pay for gas
and then pumping the gas into the vehicle.  I[t] would have shown
officers arriving, Rumpf point his gun at me, when he told me
"come here I need to talk to you" (an unconstitutional act), it would
also show the timeline of me talking to Rumpf, Hood removing the
passenger and Long immediately swabbing the vehicle, showing
Rumpf searching too minutes (approx 5) showing Long was
searching with the first minute or two.

(Reply, Doc. 17 at 15.)  Again, Petitioner never alleged any of these facts to the Arizona

Court of Appeals. (Exhibit S1-B, Petition for Review; Exhibit S1-C, Reply on PFR.)

Moreover, nothing in what Petitioner alleges would have negated a finding that the

search of the vehicle was conducted with Petitioner's consent.   Petitioner admits he

talked to Rumpf before the search and swabbing of the vehicle began.   Petitioner does

not suggest how the video could establish that his conversation with Rumpf did not

include a consent to the search.

Petitioner offers nothing but speculation that the video would show how the

contraband got in his vehicle.   Moreover, Petitioner's argument to the state court was not

that the contraband was not his (e.g. perhaps to suggest it was planted by the officers),

but simply that he had not consented to the search.

Destruction – Petitioner argues that whether or not there was audio, the

surveillance video has long since been destroyed.   Petitioner contends that it remained

available at a time that pre-trial counsel should have pursued its capture.   However, the

destruction of the tape would only be relevant if it included audio to demonstrate that

during Petitioner's self-admitted conversation with Detective Rumpf Petitioner did not

consent to the search.   Despite alleging various conversations with employees of the

service station about the surveillance video, Petitioner fails to proffer anything to show

12

1    that audio was included.

2        Search Incident to Arrest or Investigatory Stop – In rejecting Petitioner's direct

3    appeal, the Arizona Court of Appeals concluded that the seizure of Petitioner was

4    appropriate under *Terry v. Ohio*, 392 U.S. 1 (1968), etc. as an investigatory stop on the

5    basis of reasonable suspicion, with the reasonable suspicion in this case resulting from

6    the information provided by the confidential informant and its verification by

7    Petitioner's appearance at the place and time and in the vehicle indicated.  (Exhibit F,

8    Mem. Dec. 10/29/09 at 7-8.)

9        Apparently in response, Petitioner argues in his related Ground Two that the

10   "scene was secure," that Petitioner "had no access to the vehicle from the outset."

11   (Petition, Doc. 1-3 at "7", physical page 42.)  In his Reply, he argues that under *Arizona*

12   *v. Gant*, 556 U.S. 332 (2009),[6] and the preceding state court decision in *State v. Gant*,

13   216 Ariz. 1, 162 P.3d 640 (2007), a warrantless search of his vehicle was thus no longer

14   justified.

15       The Supreme Court has long recognized an exception to the warrant requirement

16   for searches incident to arrest and incident to an investigatory stop.  In *Terry v. Ohio*,

17   392 U.S. 1 (1968), the Court recognized an exception for a pat-down for weapons where

18   an officer was conducting an investigatory stop:

19            where a police officer observes unusual conduct which leads him
20            reasonably to conclude in light of his experience that criminal
             activity may be afoot and that the persons with whom he is dealing
21            may be armed and presently dangerous, where in the course of
             investigating this behavior he identifies himself as a policeman and
22            makes reasonable inquiries, and where nothing in the initial stages
             of the encounter serves to dispel his reasonable fear for his own or
23            others' safety, he is entitled for the protection of himself and  others
             in the area to conduct a carefully limited search of the outer clothing
24            of such persons in an attempt to discover weapons which might be
             used to assault him.

25   ────────────────────
     [6] Because the U.S. Supreme Court's decision in *Gant* was decided on April 21, 2009,
26   long after Petitioner's conviction, it was unavailable to counsel at trial, and thus is
     largely irrelevant to the effectiveness of trial counsel.  It did, however, predate the
27   determination of his direct appeal, and thus was available to appellate counsel.
     However, the U.S. Supreme Court affirmed the decision of the Arizona Supreme Court
28   in *Gant*.  Because it does not alter the outcome, the undersigned treats the U.S. Supreme
     Court's decision as being available to both appellate and trial counsel.

392 U.S. at 30.

Similarly, in *Chimel v. California*, 395 U.S. 752 (1969), the Court recognized an exception for protective searches incident to an arrest, and expanded it to include areas within the reach of the arrestee, even if not on his person:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.

395 U.S. at 762-63.

In *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), the Court acknowledged that evidence of a crime discovered in the course of a warrantless but proper protective search of a suspect could nonetheless be used against the suspect.

In *Michigan v. Long*, 463 U.S. 1032 (1983), the Court expanded the scope of a *Terry* search incident to an investigatory stop to include "the area surrounding a suspect" in which a weapon might be hidden and within the grasp of the suspect. 463 U.S. at 1049.

In *Gant,* however, the Court clarified that the exception to the warrant requirement for such protective searches was not a free ranging invitation to search. The Court held that the rationale for the protective search "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343.  Under *Gant,* and Petitioner's allegations that he was removed from and unable to access the vehicle at the time the search was conducted, the search would arguably not have been permissible as a protective search incident to an investigatory stop or an arrest.

Petitioner's *Gant* argument is misplaced, however, for two reasons.  First, in his

direct appeal the Arizona Court of Appeals did not rely upon *Terry* to justify the search of the vehicle and seizure of the drugs, but only to address Petitioner's argument "that the detectives illegally seized **him**."  (Exhibit F, Mem. Dec. 10/29/09 (emphasis added).)  Thus, the state court was not required to apply the analysis under *Gant* or its predecessors concerning the limits on a search for weapons or resulting seizures of evidence.

Second, in his petition for review in his PCR proceedings, the Arizona Court of Appeals again did not rely upon the warrant exception for protective searches, but upon Petitioner's consent to the search.  With that consent, officers no longer were required to limit their search to a protective search for weapons within his reaching distance.

Thus, even if the video would have shown that Petitioner was "secured" away from the vehicle, it would not have invalidated the consent based search.

<u>Prejudice</u> - To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  As discussed hereinabove, Petitioner fails to assert allegations that would establish a reasonable probability that the surveillance tape would have resulted in a different finding on the suppression issue.   Nor did Petitioner present evidence to that effect to the state courts, as required by 28 U.S.C. § 2254(d)(2).

As noted by the Arizona court on direct appeal, both Detectives Rumpf and Long testified that the search of the vehicle did not begin until after Petitioner had consented to the search.[7]  As discussed hereinabove, Petitioner fails to proffer anything to show that the video tape would have contradicted that testimony, let alone have overcome it.

Based upon the foregoing, the undersigned concludes the Petitioner has failed to

---

[7] Petitioner suggests in his Ground Two that Detective Long's testimony was not first hand knowledge, but based on an after-the-fact review of Detective Rumpf's written report of the incident. (Petition, Doc. 1 at 7.)  That, of course, does not establish that the surveillance video would have negated a finding of consent.

show that trial counsel was ineffective for failing to obtain the surveillance video.  Even if this Court could find that trial counsel was ineffective, Petitioner has failed to show that the rejection of his claim of ineffectiveness based upon the video tape was an unreasonable application of Supreme Court law or an unreasonable determination of the facts.

**Interview Witnesses** – Petitioner contends counsel should have interviewed the service station employees to secure information on the video tape.  For the reasons discussed above, that video tape would not have altered the outcome, and thus interviewing the employees concerning the matter has not been shown to have been prejudicial.  This claim is without merit.

**Plea Agreement** – Petitioner complains that counsel Hanna attempted to coerce him into a plea agreement. It appears that Petitioner simply raises this as part of the *res gestae* of his narrative that counsel Hanna was not diligently representing him.

Even if Petitioner intended to raise this as a separate claim, Petitioner did not enter into such an agreement.  Whatever detrimental effect any such efforts by counsel Hanna might have had, they would have been erased by the appointment of Petitioner's second and third counsel thereafter.  This claim is without merit.

**Motion to Suppress** – Petitioner complains that counsel failed to file an appropriate motion to suppress.  Petitioner's third counsel filed a motion to suppress "on grounds that [Petitioner's] alleged consent to the search was coerced."  (Exhibit D, Opening Brief at 2.)  In contrast, at the suppression hearing (while self-represented) and in the present proceeding Petitioner has not contended that a consent was coerced but that none was given.

However, Petitioner fails to establish that any motion to suppress would have been granted.  Thus, even a motion to suppress mimicking Petitioner's present arguments would have been futile. "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

1    This claim is without merit.

2    **Suppression Hearing** – Petitioner complains that counsel failed to adequately
3    prepare for the suppression hearing, in turn leaving Petitioner to litigate on his own.
4    Petitioner fails to suggest what additional preparation was required. To the extent that
5    Petitioner relies upon the omitted surveillance video and related witnesses, Petitioner
6    fails (as discussed hereinabove) to establish that a different result would have occurred
7    had such evidence been presented.

8    Even if Petitioner were understood as arguing that the prejudice from the failure
9    to prepare was the impact on Petitioner's decision to proceed without counsel, Petitioner
10   proffers nothing beyond the surveillance video evidence to establish that a different
11   result would have occurred had Petitioner been represented by counsel at the suppression
12   hearing. Petitioner does not, for example, provide additional testimony or other evidence
13   that would have negated a finding of consent. Thus, whatever Petitioner's limitations
14   may have been, he proffers nothing to establish that counsel would have obtained a
15   different result.

16   This claim is without merit.

17   **Appellate Counsel** – Finally, Petitioner complains that appellate counsel failed to
18   raise arguments on direct appeal on these issues.

19   To the extent that Petitioner believes appellate counsel should have raised his
20   claims of ineffective assistance, Petitioner neglects to consider the impact of the
21   direction by the Arizona appellate courts that such claims must be brought in a petition
22   for post-conviction relief. The *Martinez* Court observed: "The State of Arizona does not
23   permit a convicted person alleging ineffective assistance of trial counsel to raise that
24   claim on direct review. Instead, the prisoner must bring the claim in state collateral
25   proceedings." *Martinez v. Ryan*, 132 S.Ct. 1309, 1313 (2012).

26   To the extent that Petitioner believes that appellate counsel should have directly
27   challenged the suppression of the evidence, then for the reasons discussed hereinabove,
28   Petitioner fails to establish that such an argument would have been fruitful.

17

1    This claim is without merit.

2    **Summary** – For the reasons discussed hereinabove, Petitioner has failed to show

3    that his pre-trial, trial or appellate counsel were ineffective.  Accordingly, Ground Three

4    is without merit and must be denied.

5

6    **B.  GROUND TWO: ILLEGAL SEARCH**

7    For his Ground Two, Petitioner argues that the search of his vehicle was

8    unconstitutional because it was not supported by a warrant, probable cause, or consent.

9    (Petition, Doc. 1-3 at "7", physical page 42.) Respondents argue that this claim may not

10   be raised on habeas review pursuant to *Stone v. Powell*, 428 U.S. 494 (1976) because

11   Petitioner had an opportunity for a full and fair hearing on the claim.  (Answer, Doc. 11

12   at 6-7.)

13   Petitioner argues that he did not have such an opportunity because the trial judge

14   relied on "notes" of the suppression hearing rather than the actual reporters transcript in

15   making his decision, and the notes were incorrect.  Thus, he argues, the trial court's

16   decision was based on an unreasonable determination of the facts.  (Reply, Doc. 17 at 4-

17   7.)  Petitioner further argues that the search was not a valid search incident to arrest

18   pursuant to *State v. Gant*, 216 Ariz. 1 (2007), the testimony of consent was

19   uncorroborated, no probable cause supported the search, and this Court should establish

20   a "bright-line" rule requiring written consents to a search.  (Reply, Doc. 17 at 7-12.)

21   **Exclusionary Rule Not Applicable on Habeas** – Petitioner argues that the state

22   courts erred in allowing consideration of the evidence seized from his vehicle.  Such a

23   claim would be based upon the trial court's failure to enforce the exclusionary rule,

24   which normally precludes the introduction of evidence obtained from an illegal search.

25   But, the exclusionary rule is not applicable in these proceedings.  "Exclusion is

26   'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned

27   by an unconstitutional search. The rule's sole purpose, we have repeatedly held, is to

28   deter future Fourth Amendment violations."  *Davis v. U.S.*, 131 S.Ct. 2419, 2426 (2011).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court recognized that habeas proceedings are so far removed from the offending conduct that any deterrent effect is outweighed by the societal cost of ignoring reliable, trustworthy evidence and the judicial burden of litigating collateral issues.  Thus, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 494. [8]

Petitioner argues he was not provided an opportunity for a full and fair litigation of his claim because the trial court relied on its notes rather than a reporter's transcript of the proceedings.  However, Petitioner points to no authority precluding a fact-finder from utilizing its own notes to resolve a factual issue.  The undersigned knows of none.  Indeed, the federal courts have long permitted juries to take and consider their own notes in deciding a case.  *See e.g. Harris v. U.S.*, 261 F.2d 792 (9th Cir. 1958).

Nor does Petitioner point to any authority requiring a fact finder to consult a reporter's transcript before deciding an issue.  The undersigned knows of none.

The heart of Petitioner's argument seems to be, not that the judge consulted his notes, but that the notes were (according to Petitioner) an incorrect summary of the actual testimony.  However, *Stone* did not mandate a correct determination of a Fourth Amendment claim.

Indeed, in *Mack v. Cupp*, 546 F.2d 898 (9th Cir. 1977), the petitioner argued that he was entitled to raise his Fourth Amendment claims in his habeas petition because the state court had wrongly resolved various factual issues and had considered facts that were not in the record.  The Ninth Circuit observed in comparison that the "standard applicable to granting evidentiary hearings in a habeas proceeding (the "*Townsend*" standard) was "concerned with the accuracy of the state's decision making, a consideration that is not relevant to the mandate of *Stone v. Powell*."  564 F.2d at 901.

---

[8] This limitation on consideration of Fourth Amendment claims does not extend to related claims of ineffective assistance of counsel.  *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

1    "Nevertheless, the court's mistaken recitation of the facts, even assuming arguendo that it

2    resulted in an incorrect decision, is not enough, in and of itself, to establish that Mack's

3    claims were not fully and fairly considered." *Id.* at 902. *See also Locks v. Sumner*, 703

4    F.2d 402 (9th Cir. 1983).

5        Petitioner poses the question "what is **Fair**?" (Reply, Doc. 17 at 4 (emphasis in

6    original).)   The answer from the Ninth Circuit is that "fair" is something other than

7    "correct."

8        It is true that Petitioner has complained repeatedly throughout his proceedings

9    about the limitations on his capabilities of self-representation at the suppression hearing.

10   However, other than the surveillance video and related witnesses, Petitioner points to

11   nothing which he was unable to present at his suppression hearing.   Under the facts

12   alleged by Petitioner, the surveillance video was not lost, however, because of any

13   deficiency in the state court's hearing on his suppression motion.   Indeed, it purportedly

14   had been taped over long before Petitioner was self-represented, and long before the

15   suppression hearing itself.

16       Here, Petitioner clearly had a full and fair opportunity to present his Fourth

17   Amendment claims to not only the trial court, but also the appellate court.   *See Johnson*

18   *v. Meacham*, 570 F.2d 918 (10th Cir. 1978) (full and fair opportunity provided by

19   opportunity for review on appeal, even though claim ultimately denied for failure to raise

20   it at trial).   Petitioner's invitation for this Court to reexamine the correctness of the

21   determinations in those proceedings is the very sort of invitation that the Supreme Court

22   concluded in *Stone* must be declined.

23       **Rule Making Not Appropriate** - Similarly, this Court must decline Petitioner's

24   invitation to "set a bright-line rule" requiring the use of written consent forms.   The clear

25   import of 28 U.S.C. § 2254(d)(1) is to limit the use of habeas review of state court

26   decisions on the merits of a federal claim to the search for decisions that have misapplied

27   law as determined by the U.S. Supreme Court, either previous to the state court's

28   decision or explicitly made retroactive by the U.S. Supreme Court.   Because the Arizona

courts have addressed Petitioner's Fourth Amendment claims on the merits, this Court cannot engage in after-the-fact rulemaking to upset their decisions.

### C.  GROUND FOUR: PROCEDURAL BAR

In his Ground Four, Petitioner argues that his right of self-representation was denied "once Petitioner was forced to choose between poor inadequate counsel and self-representation by not giving Petitioner access to necessary materials for defense." (Petition, Doc. 1 at 9.)

Respondents argue that this claim was procedurally barred by the Arizona Court of Appeals in Petitioner's PCR proceeding based upon Petitioner's failure to raise them on direct appeal.  (Answer, Doc. 11 at 9-11.)

Petitioner replies that the fault lies with appellate counsel, and the limitations on his access to legal resources during trial.  (Reply, Doc. 17 at 18-19.)

### 1.  Procedural Bar on Independent and Adequate State Grounds

**Exhaustion Requirement** - Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209,

1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Procedural Default** - Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

**Procedural Bar** - Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**Application to Ground Four** – Here, Petitioner raised the instant claim in his Petition for Review in his PCR proceedings. The Arizona Court of Appeals addressed the claim and found it procedurally barred

> However, Mided's claim that his waiver of counsel was involuntary is precluded by Rule 32.2(a)(3) because it could have been, but was not, raised on direct appeal. For the same reason, we find precluded his claim that the state interfered with his right to self-representation by denying him access to resources he believed necessary to mount his defense.

(Exhibit N, Mem. Dec. 8/13/12 at 3.)

Petitioner makes no suggestion that the waiver bar under Arizona Rule of Criminal Procedure 32.2(a)(3) is not independent and adequate.

## 2. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) the ineffectiveness of appellate counsel; and (2) the limitations on his legal resources during trial.

23

**Ineffective Assistance of Appellate Counsel** – Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998). However, a claim of ineffective assistance of counsel showing "cause" is itself subject to the exhaustion requirements. *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Edwards v. Carpenter*, 529 U.S. 446 (2000). Accordingly, "[t]o the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court." *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

Here, Petitioner has never asserted to the state courts a claim of ineffective assistance of appellate counsel in failing to raise arguments concerning his right of self-representation. Indeed, in rejecting the underlying substantive claims, the Arizona Court of Appeals noted: "Finally, Mided does not argue his appellate counsel was ineffective for failing to raise this claim." (Exhibit N, Mem. Dec. 8/13/12 at 3.)

Accordingly, Petitioner may not rely upon any such ineffectiveness as cause to avoid the procedural bar of his claim.

**Limitations on Legal Resources** – Petitioner complains about the limits on his legal resources while incarcerated in the Yavapai County Jail during trial. While such limitations might be relevant to the merits of his procedurally barred claim, they are irrelevant to showing cause for his failure to raise the claim on direct appeal. Not only was Petitioner represented by appellate counsel at that time, and thus not dependent upon his own legal resources, but his Supplemental Brief on direct appeal reflects that he was then incarcerated in the Arizona State Prison in Yuma, Arizona, not the Yavapai County Jail.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to

establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 3.  Actual Innocence as Cause

Petitioner argues that failing to hear his claim would result in a "miscarriage of justice."  (Reply, Doc. 17 at 18.)

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway."  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner asserts that had his efforts at litigating his claims not been obstructed, "petitioner would have gained employee interviews, and witnesses, and

evidence to prove his innocence." (Reply, Doc. 17 at 19.) Those broad and conclusory assurances are not sufficient to meet the requirements under *Schulp*.

The only actual evidence or testimony that Petitioner suggests is available to him is the surveillance video. However, Petitioner mainly contends that its function would be to show an unconstitutional search. An unconstitutional search does not establish Petitioner's actual innocence - - it is irrelevant to his actual innocence. The only manner in which he contends it would relate to his actual innocence is his conclusory speculation that it show who planted the drugs in his car. Of course, the video no longer exists. (And the assumption that it would show drugs being planted contradicts testimony that his passenger was aware of and admitted the pre-existing presence of the drugs.) Thus, Petitioner offers nothing more than conjecture to support a claim of factual innocence.

Petitioner proffers no new evidence to establish his actual innocence of the crimes for which he was convicted. Thus, he fails to make a showing that no reasonable juror would have found him guilty. Accordingly his procedurally barred claims must be dismissed with prejudice.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability

("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Ground Four of the Petitioner's Petition for Writ of Habeas Corpus, filed March 14, 2013 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed March 14, 2013 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 20, 2014

13-8050r RR 14 01 30 on HC.docx

James F. Metcalf
United States Magistrate Judge